Carpenter v. Going, Adm'r.

---

## CARPENTER *vs.* GOING, Adm'r.

1. A voluntary sale, without any legal compulsion, by an executor *de son tort*, confers on his purchaser no better title than he himself had.
2. A voluntary purchaser from an executor *de son tort*, when sued in trover by the rightful administrator, cannot show, in mitigation of damages, that since his purchase, the executor *de son tort* has paid debts which the administrator was bound to pay in due course of administration.
3. Whether under our statutes, the executor *de son tort*, when sued in trover by the rightful administrator, can show such payments in mitigation of damages, Quœre ?

ERROR to the Circuit Court of Greene.
Tried before the Hon. John D. Phelan.

J. B. CLARKE, and WATTS, JUDGE, & JACKSON, for plaintiff:

1. The action of trover is an equitable action, and the defendant has a right to give in evidence any fact or facts which will show that the plaintiff ought not to recover full damages. Strong v. Strong, 6 Ala. Rep. 345; Plevin v. Henshall, 10 Bing. 24, (25 E. C. L. R. 17); McGowen v. Young, 2 S. & P. 160, 170, 171; Baldwin v. Porter, 12 Conn. Rep. 473; Sedgwick on Dam. 519.

2. An executor *de son tort* has a right to give in evidence,

in mitigation, the payment of the *bona fide* debts of the deceased, so as to reduce the damages to a nominal sum, or indeed, defeat a recovery. Mountford, Adm'r. v. Gibson, 4 East, 441; Hostler's Adm'r. v. Scull, 2 Haywood, 179; 4 Bacon's Ab., 32, 33; Saam v. Saam, 4 Watts, 432; 2 Saunders' Pl. & Ev., 513; 14 Pick. 356; 6 Mass. 323.

3. And the purchaser of property from an executor *de son tort* is at least entitled to make any defence that his vendor could make.

S. F. Hale, for defendant:

The title to personal property of a deceased testator or intestate vests in the personal representative, when appointed, and has relation back to the death of the testator or intestate; and a sale thereof, if made by any other person, or even by the personal representative otherwise than as provided by the statute, is void, and confers no rights upon the vendee. 12 Ala. Rep. 532; 15 ib. 707; 9 ib. 912; 4 Ala. 443; 12 ib. 298; 10 Peters', 161; 4 Munford, 194; 4 Har. 168; 18 Ala. Rep. 828.

And the sale being void, the personal representative can either bring an action of detinue, and recover the specific property, or an action of trover, and recover its value from the vendor, notwithstanding the proceeds may have gone to the payment of the debts of the testator. 4 Har. & Johnson, 394; 4 Harrington, 168; 2 Brevard, 307.

Carpenter was guilty of a conversion of the slave, and liable for his full value in an action of trover the moment he converted him to his own use; and no act of his, without the consent of the party aggrieved, can defeat the action. 21 Wendell, 396; 17 ib. 91.

The doctrine of recoupment does not apply, except in cases where the demands spring out of the same transaction, and are between the same parties. 13 Ala. Rep. 595; 6 ib. 82; 15 Wendell, 158.

And Mrs. Woolfolk paid the debts of Woolfolk, the testator, if any were paid, and not Carpenter; and a court of law cannot subrogate Carpenter to her rights, whatever they may be.

A bill of exceptions is always taken most strongly against

the party excepting, and every intendment will be made, consistent with the facts set out in the bill of exceptions, to sustain the judgment of the court below.

So far as this court is informed by the bill of exceptions, the estate of Woolfolk is wholly insolvent; and if that be so, and the plaintiff in error is allowed to reduce the amount of the damages for the conversion of the slave, by the amount of the proceeds thereof that may have been appropriated in payment of the debts of the testator, it will be permitting the parties, by an improper intermeddling with the estates of deceased persons, to prefer one creditor to another, and thereby defeat the whole policy of our laws upon that subject. 2 New Hampshire, 477.

If a rightful administrator had made the sale without an order of court, the sale would have been void, and have conveyed no title. Surely, then, a sale made by a person who is not rightful administrator, without an order of court, cannot confer a title.

It is said, that trover is an equitable action, like assumpsit. Now, suppose that an action of assumpsit had been brought against Carpenter for the value of the slave, could he set off against that claim money paid by Mrs. Woolfolk in payment of debts of the estate, without showing it was done at his instance or request, or that the administrator had claimed the benefit of such payment; in other words, can a wrong doer take the property of a third person in payment of his debt, without his consent, and thus defeat the rights of the true owner, without his consent or acquiescence ?

DARGAN, C. J.—This was an action of trover, brought by Alfred E. Going, as administrator *de bonis non* of Thomas Woolfolk, deceased, against Thomas Carpenter, to recover damages for the conversion of a slave, which belonged to the decedent at the time of his death. The defendant, for the purpose of mitigating the damages, offered to prove the following facts: Thomas Woolfolk, before his death, executed his last will and testament, whereby he appointed his wife executrix, and made her his sole legatee during her widowhood. After his death, the widow proved the will, which was admitted to probate, but did not take out letters testa-

mentary, or of administration, and shortly after the probate of the will, she advertised several of the slaves belonging to the estate for sale. At this sale the defendant became the purchaser of the slave in controversy, and paid for him a thousand and one dollars. He further offered to prove, that the money thus paid was applied by the widow to the payment of the *bona fide* debts owing by the testator at the time of his death. The plaintiff objected to the introduction of this evidence, and his objection was sustained; whereupon the defendant excepted.

We think the counsel for the plaintiff in error properly admitted, that under our statutes, the sale by the widow gave the defendant below, who is plaintiff in error, no title to the slave, as against the rightful administrator; and the only question, therefore, is, was the testimony admissible in mitigation of damages? We can consider Mrs. Woolfolk in no other light than as an executrix *de son tort;* and consequently she had no legal title to the slave in question. Having none herself, as against the lawful administrator, she could impart none to her vendee. It would never do to allow a purchaser to obtain a good title to the goods of the deceased, as against the lawful administrator, by the *mere act of sale,* by an executor of his own wrong. I intend, however, to confine this remark to the precise words I have expressed, for there may be cases in which a purchaser may get a good title; as if judgment be rendered against an executor *de son tort,* and the goods of the deceased are sold under an execution issued thereon, the title of the purchaser may be valid. This, however, I do not intend to decide; and I have stated the supposed case, to show that we now hold that the mere voluntary sale by an executor *de son tort,* without any legal compulsion, will not confer on his purchaser a better title than he himself had.

The counsel for the plaintiff in error, admitting this proposition to be true, contend, that when an executor *de son tort* is sued in trover by the rightful administrator, that though he cannot defeat the action *in toto,* yet he may show that he has paid the debts which the administrator was bound to pay in due course of administration, and if such payments equal the value of the property sold, the administrator can recover only nominal damages. I admit that this is the settled law

of England, and it has been recognized in several of the
United States. See Williams on Executors, Vol. 1, 144;
Bacon Ab. tit. Executors & Administrators, Vol. 4, 32; Tol-
ler on Executors, 365; Viner's Ab. Vol. 11, Book E. 215;
Saam v. Saam, 4 Watts, 432; Hostler v. Scull, 2 Haywood,
179. But the question is, can the purchaser from the execu-
tor *de son tort*, be substituted to this equitable defence, that
the executor *de son tort* might himself make. We think that
he cannot, *at least in a court of law*. We do not intend to
deny the common saying, that trover is an equitable action,
and that the plaintiff can recover damages only to the extent
of the injury actually sustained; as if the mortgagee bring
trover against the mortgagor, he can recover only the amount
of the debt; or if goods be sold illegally to discharge a lien,
the owner can recover of the purchaser only the value of the
goods, deducting the amount of the lien. But we hold, that
this equity or right must be personal to the defendant him-
self; that is, it must have existed in him at the time he be-
came liable to the action, or if acquired afterwards, it must
have been acquired by his own act; for at law he cannot be
subrogated to the equities of another, which have sprung up
after the liability of the defendant has become perfect. Let us
test this principle by the facts of this case. It is clear, that at
the time of the defendant's purchase, when he paid the price
to Mrs. Woolfolk, he was then liable in trover (if there had
been a lawful administrator), to the extent of the value of the
slave, for at that time no equitable defence existed, either in
his favor or in favor of Mrs. Woolfolk; and to allow him to
set up the subsequent acts of Mrs. Woodfolk as his equity,
would not only be to subrogate him to the rights of another,
but would often lead to inquiries so embarrassing and com-
plicated, that a court of law would never be assured that the
ends of justice had been attained. I do not remember a case
where one has been subrogated to the equitable rights of
another, in a court of law, and I am unwilling to take the
first step, even to reach the supposed justice of a particular
case; especially when we see that such subrogation would or
might lead to inquiries far beyond the simple issue, and in-
volve inquiries respecting the rights of others not before the
court, which a court of law would not only be unable to pro-

tect, but would be unable to do full and complete justice in the particular case.

It may, however, be said, that the purchaser from a mortgagor, or from one who held the lien on the chattel, can reduce the recovery to the extent of the debt or lien, and that this is a mere subrogation at law to the rights of him from whom he purchased. But it must be borne in mind, that the purchaser acquires this right by his own act, to wit: the act of the purchase, and the chattel comes to his hands clothed with it; he therefore asserts his own equity in making that defence, and not the equity of another, arising after his liability is fixed or perfect, and from an act to which he is not privy.

I am satisfied, that the defence ought not to be allowed at law, and it is not now necessary to say whether it can avail the party in a court of equity; but if he can insist on it at all to reduce the amount of the recovery, it must be in that court, and not in a court of law. I have said, that the executor *de son tort*, when sued in trover by the lawful administrator, may reduce the damages, according to the English law, by showing that he has paid debts which the administrator, in due course of administration, would have been bound to pay. I do not, however, intend to decide, that under our statutes, this can be done at law, even by the executor *de son tort* himself; but even conceding that he may, we all concur in this, that his vendee cannot, by showing payments after his purchase.