# Keith & Son *v.* Ham.

*Special Action on the Case for Damages, by Mortgagee against Purchaser of Mortgaged Crops.*

1. *Assignment by partner of interest in partnership assets.*—An assignment by one partner, for valuable consideration, of "all the right, title and interest he has in and to the stock of goods, notes and accounts now owned and due" to the partnership, passes to the assignee such an interest in a claim secured by a mortgage on crops, as authorizes him to join with the other partner, as joint plaintiffs, in an action for the conversion of the crops, or a special action on the case for damages in the nature of an action of trover.

2. *Mortgage of crops to be raised on rented lands.*—When a tenant has

[Keith & Son v. Ham.]

made a contract for the rent of land, part of a larger tract, he may make a valid mortgage on the crop to be raised by him on it, although no particular part of the tract is specified in the contract, and he has not selected any particular portion of it.

3. *Damages for conversion of mortgaged property; abatement or reduction.*—In trover by the mortgagee of crops, against a purchaser with notice, or a special action for damages in the nature of trover, the unauthorized sale and conversion being admitted, the defendant can not be allowed to prove, in abatement or reduction of damages, that a part of the proceeds of sale received by the mortgagor was applied by him to the landlord's claim for rent, the lien of which was superior to the mortgage.  (STONE, C. J., dissenting.)

APPEAL from the Circuit Court of Geneva.

Tried before the Hon. JESSE M. CARMICHAEL.

This action was brought by J. N. Ham and P. J. Ham, against Keith & Son as partners, to recover damages for the defendants' unauthorized sale and conversion of two bales of cotton, on which plaintiffs claimed to hold a mortgage, whereby their lien as mortgagees was defeated and destroyed; and was commenced on the 4th November, 1887. The complaint contained only a special count in case, which alleged that, on the 8th January, 1887, J. F. Martin was indebted to the firm of Ham & Collins (a firm composed of J. N. Ham and J. S. Collins) in the sum of $140, and, to secure said indebtedness, executed to them a mortgage on all the crops raised by him during the year; that on the 29th August, 1887, said Collins transferred and assigned to P. J. Ham, for valuable consideration, "all the right, title and interest which he had in said mortgage and the debt secured thereby;" that the mortgage was duly recorded; that the defendants, in September, 1887, having notice of the mortgage, received, sold, and converted to their own use, two of the bales of cotton conveyed by the mortgage, and that plaintiffs' lien was thereby lost. The defendants demurred to the complaint, on the ground of a misjoinder of plaintiffs, "because it is in the name of J. N. and P. J. Ham, while it was a transfer from J. S. Collins to P. J. Ham alone, and shows no interest in the mortgage in said J. N. Ham." The court overruled the demurrer, and the defendants then pleaded the general issue.

On the trial, as the bill of exceptions shows, the plaintiffs read in evidence the mortgage executed by J. F. Martin to Ham & Collins, which was dated January 8th, 1887, recited an indebtedness of $140, and conveyed the mortgagor's entire crop raised on any lands in *Coffee* county cultivated by him during the year 1887; and it seems to have been duly recorded, both in Coffee and Geneva counties. The plaintiffs

then read in evidence the transfer and assignment executed to P. J. Ham by J. S. Collins, which was dated August 29th, 1887, recited the payment of $1,098.74 as its consideration, and transferred "all the right, title and interest he has, in and to the stock of goods, notes and accounts, now owned and due to said firm of Ham & Collins," with power to sue and collect. The execution of this instrument was admitted, but the defendants objected to its admission as evidence, "because the same was ineffectual to pass to P. J. Ham any title or interest in and to said mortgage." The court over-ruled the objection, and the defendants excepted.

"The evidence for the plaintiffs tended to show that said J. F. Martin, the mortgagor, had rented lands for the year 1887 from Allen Motley, and also from one Armen; that said lands were in Coffee county, and said Martin raised a crop of cotton on them; and the evidence tended to show that two bales of said crop were brought to Geneva, and sold by Martin to defendants. The plaintiffs here rested their case. The testimony for the defendants tended to show that, of the cotton which went into said two bales, 700 lbs. was raised on lands rented by said Martin from Allen Motley, and the other portion thereof was got by said Martin from his father; that the rent due said Motley, for the rent of said lands, had not been paid; that said Motley, after said cotton had been ginned and baled, accompanied said J. F. Martin to Geneva; and that said Martin, after the sale of said cotton to defendants, applied twenty dollars of the proceeds to the payment of the rent due to said Motley."

"This being all the evidence in the case, the defendants requested the following charges in writing," duly excepting to their refusal: (1.) "The jury must believe from the evidence that, at the time Martin executed the mortgage to Ham & Collins, he had rented some definite place, and that the cotton in controversy was made on said rented place." (2.) "If the jury believe from the evidence that Motley had a landlord's lien for rent on a portion of the cotton sold by Martin to the defendants, and that Martin applied $20 of the proceeds of sale to the payment of said rent, then defendants are entitled to a credit for the amount so paid to said Motley."

The refusal of the charges asked, and the rulings on the pleadings and evidence, are assigned as error.

M. E. Milligan, and H. L. Martin, for appellants.

[Keith & Son v. Ham.]

McCLELLAN, J.—It is immaterial what effect the assignment by Collins of his interest in the property belonging to the firm of Collins & Ham had upon the partnership, or whether the assignee and Ham constituted a new partnership. The assignment, at least, operated to vest Collins' interest in the assignee, and to make him, jointly with the other partner, the owner of the assets which had belonged to the partnership, among which was the mortgage covering the cotton alleged to have been converted. And this suit was instituted, and properly so, by these joint owners, or owners in common, as such, and not upon any theory of a new and continuing partnership. It was shown that the mortgage, and a note for the amount secured by it, were executed to Collins & Ham. The transfer by Collins to P. J. Ham was sufficiently specific to invest the latter with the former's interest. It further appeared that both the note and mortgage came to the possession of P. J. and J. N. Ham. The objections taken in the court below, on the ground of a want of interest in P. J. Ham, were, therefore, properly overruled.

The evidence tended to show that, at the time of the execution of the mortgage, the mortgagor had made a contract for the rental of the lands on which the cotton alleged to have been converted was subsequently grown. It does not appear that this contract referred, nor was it essential, in our opinion, that it should have referred, to "a definite place," in the sense that term is used in the charge requested by the defendants. A valid contract for the rental of a given quantity of land out of a larger tract, or for the rental of one or another of several tracts, the particular tract or place to be thereafter selected by the tenant, or determined upon in any practical way, would carry such a present interest in the land, afterwards segregated and subjected to the contract, as would give vitality and validity, in equity, to a mortgage of the crops to be planted and grown thereon. The charge requested was misleading, and there was no error in its refusal.

A part of the cotton alleged to have been converted had been, according to some of the testimony, raised on rented land, and was, at the time of the conversion, subject to a landlord's lien, which was, of course, superior to plaintiffs' mortgage. The evidence tended to show, further, that twenty dollars of the proceeds of the sale to defendants was paid by the mortgagor to the landlord, in satisfaction of the

38

claim for rent. The court was requested in writing, and refused, to charge the jury that this state of facts, if found to exist, entitled the defendants to a reduction of damages to the amount so paid. It is insisted that, inasmuch as this is an equitable action, and open to equitable defenses, the payment thus made, not by the defendants, or as a part of the transaction in which the conversion was consummated, but by a third person, and subsequent to the conversion, was in satisfaction of a prior lien, and, hence, enured to the benefit of the plaintiffs, and their recovery, in equity and good conscience, should be mitigated to the extent their security was freed from this incumbrance. Had this action been against the mortgagor, there would be more force in this position, for clearly he not only had the right, but it was his duty, to discharge the landlord's lien for rent. Or, had the case been one involving the general ownership of the property, and it had appeared that the fruits of the conversion had been applied, by the consent, express or implied, of the plaintiffs, or through legal proceedings had at the instance of a third person, to the payment of their debt, or in relieving their property from a lien, the damages recoverable by them in trover might be mitigated by the amount thus paid for them.—*Bird v. Womack*, 69 Ala. 392; *Street v. Sinclair*, 71 Ala. 210. Or, had a recovery been had in favor of the landlord against the defendants, it may be that evidence of that fact might go in reduction of the mortgagee's damages. But here, even conceding that the payment was in some sort to the advantage of the plaintiffs, we can not conceive how the fact can avail the defendants in this action. The *gravamen* of this action is the wrongful purchase and conversion by Keith & Son. Their wrong was fully consummated, the injury resulting from it had been sustained, and the plaintiffs' right to sue had attached, before the alleged payment to Motley, the landlord. The payment was not made by the defendants, but by the mortgagor. To hold that they are entitled to a credit for the amount, would be to subrogate them to an equity created, if it exists at all, by an act with which they have no connection, and to give them the benefit of a payment which they have not made. Whatever may be the rule elsewhere, in Alabama it has long been settled, that this species of subrogation will not be allowed. Thus, in an action of trover against the purchaser of a slave sold by an executor *de son tort*, it was sought to mitigate the damages by evidence that the purchase-money had been

[Keith & Son v. Ham.]

applied by the executor to the debts of the estate, but the right was denied. Chief Justice DARGAN, delivering the opinion of the court, said: "We do not intend to deny the common saying, that trover is an equitable action, and that the plaintiff can recover damages only to the extent of the injuries actually sustained; as, if the mortgagee bring trover against the mortgagor, he can recover only the amount of the debt; or, if goods be sold illegally to discharge a lien, the owner can recover of the purchaser only the value of the goods, deducting the amount of the lien. But we hold that this equity or right must be personal to the defendant himself; that is, it must have existed in him at the time he became liable to the action; or, if acquired afterwards, it must have been acquired by his own act. · · · It is clear that, at the time of defendant's purchase, when he paid the price to the executor *de son tort*, he was then liable in trover to the extent of the value of the slave, for at that time no equitable defense existed in his favor, or in favor of the executor; and to allow him to set up the subsequent act of Mrs. Woolfolk (the executor) as his equity, would not only be to subrogate him to the rights of another, but would often lead to inquiries so embarrassing and complicated, that a court of law would never be assured that the ends of justice had been attained. · · · · · I do not, however, intend to decide that such an equity could be asserted at law, even by the executor *de son tort* himself; but, even conceding that he may, we all concur in this, that his vendee can not by showing payments after his purchase."—*Carpenter v. Going*, 20 Ala. 587.

We are unable to draw any line of distinction between the case quoted from and that under consideration, on the point involved in the second instruction requested. Its refusal was free from error; and the judgment of the Circuit Court is affirmed.

STONE, C. J., dissenting on point last considered.