(June 1, 1925.)

OTTO NOHRNBERG, Respondent, v. M. B. BOLEY and
MRS. O. J. BOLEY, His Wife, Defendants, and R. J.
DAY, D. B. MOORMAN and FIRST NATIONAL
BANK OF TWIN FALLS, a Corporation, Appellants.

[246 Pac. 12.]

BANKS AND BANKING—COLLECTIONS—AUTHORITY TO APPLY DEPOSITS—
TROVER AND CONVERSION — CHATTEL MORTGAGES — EXECUTION —
ACKNOWLEDGMENT — VALIDITY — VENDOR AND VENDEE—CONTRACTS
FOR SALE OF REAL PROPERTY — EXECUTED CONTRACTS, ORAL AND
WRITTEN — PLEADING AND PROOF — FARM LABORERS' LIENS — PRO-
CEEDINGS TO PERFECT—APPEAL AND ERROR—NECESSITY OF FIND-
INGS OF FACT ON MATERIAL ISSUES.

    1. Where a bank holds for collection notes given by a third
party to one of its customers, it is without authority to apply to

Points Decided.

their payment funds deposited with it by a fourth party for other specific purposes, or to apply such funds in any way contrary to the instructions given at the time they were deposited.

2. Under C. S., sec. 6375, a mortgage of personal property executed but not acknowledged by both husband and wife is valid against the mortgagors and all persons not creditors of the mortgagors or subsequent purchasers or encumbrancers of the property in good faith and for value.

3. An amendment to a complaint which sets out the oral agreement incorporated in a written contract for the sale of real property, and evidence to establish such oral agreement, are properly received where it is apparent that all the terms of both the oral and written agreements were complied with by the parties, so that the contract was fully executed.

4. Farm laborers' liens being entirely of statutory creation, a person claiming the benefit of such lien must substantially comply with the statute, one of the essential requirements of which is that a claim of lien shall be filed within the prescribed time.

5. Failure of the lower court to find upon all the material issues in a case is ground for reversal on appeal.

## ON REHEARING.

6. Deposit with bank by another than parties to notes which bank held for collection, being made with such direction that it did not constitute payment on notes, namely, that bank should pay out the money as and when rights of parties holding mortgages or claiming liens were ascertained, its return to depositor did not constitute breach of contractual duty to owner of notes.

7. Bank not having aided or abetted in unlawful sale of seed was not guilty of conversion merely because proceeds of sale were deposited with it for specific purpose and afterwards withdrawn by depositor, as he had right to do as against it.

8. Under C. S., sec. 7372, construed with section 7373, there is no farm laborers' lien during the sixty days allowed by the latter section for filing claim therefor conforming to section 7362, but only an inchoate right thereto, lost by claim not being filed.

9. As against plaintiff, second mortgagee of seed, first mortgagee, who had assigned his mortgage, and so had no interest in the seed or its proceeds, and one aiding and abetting him, were guilty of conversion by taking the proceeds of sale of the seed,

42 Idaho—4

made without knowledge or consent of plaintiff, of whose mortgage they knew, and distributing it among farm laborers who might have acquired lien on the seed by filing claim, but failed to do so.

APPEAL from District Court of Eleventh Judicial District, for Twin Falls County. Hon. Wm. A. Babcock, Judge.

Action for damages for conversion of mortgaged personal property. Judgment for plaintiff. *Reversed and remanded.*

Walters & Parry, for Appellant First National Bank.

Respondent can maintain this action in conversion only if he has a valid mortgage; respondent's chattel mortgage is invalid because of the defective acknowledgment. (C. S., secs. 6374, 6375, 6920; *Myers v. Eby,* 33 Ida. 266, 193 Pac. 77, 12 A. L. R. 535; *Lemesnager v. Hamilton,* 101 Cal. 532, 35 Pac. 1054; *Homan v. Wayer,* 9 Cal. App. 123, 98 Pac. 80, 41 L. R. A., N. S., 1173, note, and cases cited; *Wilson v. Wilson,* 6 Ida. 597, at 604, 57 Pac. 708; *Alferitz v. Scott,* 130 Cal. 474, 62 Pac. 735; *Butte Hardware Co. v. Sullivan,* 7 Mont. 307, 16 Pac. 588.)

Respondent waived the lien of his chattel mortgage, if he ever had one, and therefore cannot maintain an action

Publisher's Note.

4. See 18 R. C. L. 926.

See Agriculture, 2 C. J., sec. 61, p. 1006, n. 3; sec. 62, p. 1007, n. 10; sec. 70, p. 1010, n. 50 New; sec. 82, p. 1012, n. 87.

Appeal and Error, 4 C. J., sec. 2903, p. 929, n. 88; sec. 2952, p. 970, n. 57.

Banks and Banking, 7 C. J., sec. 268, p. 609, n. 10, 12; sec. 363, p. 663, n. 53 New; sec. 569, p. 757, n. 53.

Chattel Mortgages, 11 C. J., sec. 117, p. 479, n. 99, 2, p. 480, n. 3; sec. 287, p. 592, n. 68; sec. 463, p. 685, n. 15 New.

Evidence, 22 C. J., sec. 1713, p. 1282, n. 86.

Mechanics' Liens, 40 C. J., sec. 218, p. 186, n. 45; sec. 243, p. 205, n. 9; sec. 244, p. 206, n. 20; sec. 260, p. 218, n. 18, 19; sec. 287, p. 237, n. 28; sec. 289, p. 239, n. 63; sec. 290, p. 240, n. 85; sec. 301, p. 248, n. 16.

Statutes, 36 Cyc., p. 1148, n. 31.

Trial, 38 Cyc., p. 1954, n. 16.

in conversion for the crops covered by the chattel mortgage. (5 R. C. L. 458, 459; *Knollin & Co. v. Jones,* 7 Ida. 466, 63 Pac. 638; *Utah-Idaho Livestock Loan Co. v. Blackfoot City Bank,* 290 Fed. 588; 43 L. R. A., N. S., 306, 307, note; *Adams v. Caldwell Milling Co.,* 33 Ida. 677, 680, 197 Pac. 723.)

The only connection of appellant bank with the proceeds of the seed crop was to temporarily hold the same as a special deposit; therefore, it is in no way liable to the respondent. (Zane, Banks and Banking, pp. 282, 284; *Harrison v. Smith,* 83 Mo. 210, 53 Am. Rep. 571; 7 C. J. 630, and cases cited; *People v. California Safe Deposit & Trust Co.,* 23 Cal. App. 199, 137 Pac. 1111; 3 R. C. L. 558.)

Even if appellant bank held the notes upon which respondent's action is founded, for collection, it was guilty of no such breach of duty to respondent as would render it liable to him. (7 C. J. 609; 3 R. C. L. 610, 611; *Ward v. Smith,* 7 Wall. (U. S.) 447, 19 L. ed. 207; *Carpenter v. National Shawmut Bank,* 187 Fed. 1, 109 C. C. A. 55; *Wood v. Merchants Trust Co.,* 41 Ill. 267; *Ridgley National Bank v. Patton & Hamilton,* 109 Ill. 479.)

Since the testimony affirmatively showed that the agreement of the parties as to the real estate transaction had been completely reduced to writing, the trial court erred in allowing testimony as to the preliminary negotiations between the parties. (*Jacobs v. Shenon,* 3 Ida. 274, 29 Pac. 44; *Stein v. Fogarty,* 4 Ida. 702, 43 Pac. 681; *Newmyer v. Roush,* 21 Ida. 106, Ann. Cas. 1913D, 433, 120 Pac. 464; *Jarrett v. Prosser,* 23 Ida. 382, 130 Pac. 376.)

The only connection of the appellant bank was to temporarily hold the proceeds as agent of appellant Day; it returned this money to its principal before the suit was filed; therefore it cannot be held liable in conversion. (26 R. C. L. 1139, 1140; *Leuthold v. Fairchild,* 35 Minn. 99, 27 N. W. 503, 28 N. W. 218.)

The trial court failed to find on any of the real issues of the case upon which there was conflicting evidence. (*Brown v. Macey,* 13 Ida. 451, 90 Pac. 339; *Lorenzi v. Star Market*

*Co.,* 19 Ida. 674, 115 Pac. 490, 35 L. R. A., N. S., 1142; *Turner Agency v. Pemberton,* 38 Ida. 235, 221 Pac. 133.)

Sweeley & Sweeley, for Appellants Day and Moorman.

By consenting to the sale of the property covered by his mortgage respondent waived his lien and cannot maintain an action against the purchaser for the conversion of the crops. (*Bellevue State Bank v. Hailey Nat. Bank,* 37 Ida. 121, 215 Pac. 126; *Moore v. Jacobucci,* 70 Colo. 171, 197 Pac. 1015; *Luther v. Lee,* 62 Mont. 174, 204 Pac. 365; *United States Nat. Bank v. Great Western Sugar Co.,* 60 Mont. 342, 199 Pac. 245.)

Bothwell & Chapman, for Respondent.

Since the defendants Boley and wife admit the execution of the chattel mortgage, the appellants, who are not immediate parties to that conveyance cannot impeach or attack the certificate of acknowledgment; and in view of the admissions of the appellants, as to the execution of the chattel mortgage as contained in their several separate answers, the court was bound to disregard and could not consider any evidence contrary to such admissions. (1 C. J. 891–893; *Holland v. Webster,* 43 Fla. 85, 29 So. 625; *Colonial Building & Loan Assn. v. Griffen,* 85 N. J. Eq. 455, 96 Atl. 901; *Crabb v. Bell* (Tex. Civ. App.), 220 S. W. 623; 31 Cyc. 676–678; *Hall v. Polack,* 42 Cal. 218; *Shaffer Bros. v. Warren* (Iowa), 102 N. W. 497; *Rawitzky v. Louisville & N. R. Co.,* 40 La. Ann. 47, 3 So. 387; *Traitel v. Dwyer,* 61 N. Y. Supp. 1100; *Ratliff v. Ratliff,* 131 N. C. 425, 42 S. E. 887, 63 L. R. A. 963; *Charlton v. Markland,* 36 Wash. 40, 78 Pac. 132; *Veasey v. Humphreys,* 27 Or. 515, 41 Pac. 8; *Los Angeles Pressed Brick Co. v. Higgins,* 8 Cal. App. 514, 97 Pac. 414, 420; *Capeze v. Hathaway,* 153 Ky. 519, 155 S. W. 1155; *Harper v. Clear Fork Coal & Land Co.,* 80 W. Va. 246, 92 S. E. 565; *Greenless v. Chezik,* 68 Colo. 521, 190 Pac. 667; *Lee v. Little,* 81 Okl. 168, 197 Pac. 449; Jones on Evidence, sec. 274.)

The judgment of the trial court will not be disturbed upon appeal merely because there is conflicting evidence

as to whether respondent consented to a sale of the mortgaged property and as to whether he had knowledge of the existence of labor claims against it. (*Stuart v. Hauser*, 9 Ida. 53, 72 Pac. 719; *Morrow v. Matthew*, 10 Ida. 423, 79 Pac. 196; *Robbins v. Porter*, 12 Ida. 738, 88 Pac. 86; *Later v. Haywood*, 15 Ida. 716, 99 Pac. 828; *Snowy Peak Mining Co. v. Tamarack & Chesapeake Min. Co.*, 17 Ida. 630, 107 Pac. 60; *Blackfoot State Bank v. Crisler*, 20 Ida. 379, 118 Pac. 775; *Weeter Lumber Co. v. Fales*, 20 Ida. 255, Ann. Cas. 1913A, 403, 118 Pac. 289; *Miller v. Mitcham*, 21 Ida. 741, 123 Pac. 941; *Wittenberg v. Northern Idaho Pine Lumber Co.*, 23 Ida. 66, 131 Pac. 1.)

Respondent can maintain an action in conversion against the prior mortgagee for his reversionary interest in the mortgaged property. Upon the payment and satisfaction of the prior mortgage respondent's right to the remainder of the mortgaged property, or to its proceeds, and to maintain an action in conversion therefor, became absolute as against all of these appellants. (11 C. J. 605; 5 R. C. L. 446; *Martin v. Holloway*, 16 Ida. 513, 102 Pac. 3, 25 L. R. A., N. S., 110; *First Nat. Bank v. Steers*, 9 Ida. 519, 108 Am. St. 174, 75 Pac. 225; *Googins v. Gilmore*, 47 Me. 9, 74 Am. Dec. 472; *Citizens' Nat. Bank v. McKinley*, 118 Minn. 162, 136 N. W. 579; *Clendening v. Hawk*, 8 N. D. 419, 79 N. W. 878; *Schmittdiel v. Moore*, 120 Mich. 199, 79 N. W. 195; *DeLuce v. Root*, 12 S. D. 141, 80 N. W. 181; *Reynolds v. Morton*, 23 Wyo. 528, 154 Pac. 325; *Zorn v. Livesley*, 44 Or. 501, 75 Pac. 1057; *Haynes v. Gray*, 148 Ala. 663, 41 So. 615; *Wilkes v. Southern Ry. Co.*, 85 S. C. 346, 137 Am. St. 890, 67 S. E. 292.)

The appellant bank as respondent's agent, with authority to collect this mortgage, could not relinquish respondent's rights nor recognize any adverse claim in the mortgaged property or its proceeds to appellants, Day and Moorman, or to any other person without express authority from respondent. (*Johnson v. Wilson & Co.*, 137 Ala. 468, 97 Am. St. 52, 34 So. 392; *Rigby v. Lowe*, 125 Cal. 613, 58 Pac. 153; *Clyne v. Easton, Eldridge & Co.*, 148 Cal. 287, 113 Am.

St. 253, 83 Pac. 36; *Williams & Co. v. Dotterer,* 111 La. 822, 35 So. 921; *Overseers v. Bank of Virginia,* 2 Va. (Gratt.), 544, 44 Am. Dec. 399; *First Nat. Bank v. Messner,* 25 N. D. 263, 141 N. W. 999; *Watson v. Dodson* (Tex. Civ. App.), 143 S. W. 329; *Dunn & Lallande Bros. v. Gunn,* 149 Ala. 583, 42 So. 686; *Emerson v. Turner,* 95 Ark. 597, 130 S. W. 538; *Kight v. Putney Shoe Co.,* 137 Ga. 493, 73 S. E. 740; *Tee v. Noble,* 23 N. D. 225, 135 N. W. 769.)

Appellants cannot escape liability because of their payment of alleged labor claims against this property. There must be a strict compliance with the provisions of the statute conferring a lien. Appellants had no authority to adjudicate or determine the priority or validity of such pretended claims. (C. S., secs. 7372, 7373; Jones on Liens, 3d ed., sec. 776.)

BUDGE, J.—This is an action for conversion. The facts, as disclosed by the record, are as follows: On August 10, 1920, respondent entered into negotiations with defendant M. B. Boley concerning the purchase by the latter of certain lots in the city of Twin Falls standing in the name of respondent and his wife. These negotiations culminated in a written agreement on the same day which was signed by respondent and Boley, but not by their respective wives. Respondent claims that he had purchased the lots with money derived from the sale of his business property in another state, and that they were, therefore, his separate property. Appellants, on the other hand, insist that they were community property.

While the purchase price named in the written agreement above mentioned was $5,000, no money was paid when the agreement was executed, but Boley and his wife gave respondent at that time two promissory notes, one for $1,000, due on or before forty days after date, and one for $1,500, due on or before November 1, 1920, to secure which they gave a mortgage on a certain alfalfa seed crop then growing on land operated by Boley, and on which appellant Moorman held a prior chattel mortgage to secure an indebtedness

of $450. Respondent filed his mortgage for record and placed the notes with appellant bank for collection.

On September 1, 1920, Boley and wife executed two additional notes, one for $500, due one year after date, and one for $2,000, due two years after date, and a real estate mortgage upon the lots. At the same time, respondent and his wife executed a warranty deed to the Boleys. All of these instruments, together with an abstract of title, an assignment of an insurance policy, and a satisfaction of the chattel mortgage, were placed in escrow with appellant bank, to be delivered upon payment of the first two notes above mentioned.

Boley subsequently harvested and threshed the seed, caused it to be stored in a Twin Falls warehouse, insured it, and assigned the policy to respondent as his interest appeared. Before a purchaser for the seed could be found, respondent went to California.

Appellant Day also had some seed for sale, and knew that Boley was anxious to sell the seed which he had in storage, and that the respondent had a chattel mortgage against it. Day testified that shortly before respondent left for California, and while they were expecting one Wade to come from Portland to buy the seed, he was advised by respondent that they should deal with Boley in regard to purchasing the latter's seed, and that they could buy the seed from him. Day also testified that he informed respondent that there were certain labor claims and expenses against the seed. Boley testified to substantially the same state of facts, and further testified that respondent told him to go ahead and sell the seed and do the best he could with it, and that he realized that labor liens came ahead of his mortgage. Respondent denied having had these conversations.

Wade subsequently reached Twin Falls, where, after some negotiations with Boley, he purchased both the Boley and Day seed and made payment to Day, who, in turn, drew a check for the price of the Boley seed and gave it to Maxwell, the cashier of appellant bank, at the same time telling

Maxwell that there were labor bills and a thresher's bill against the seed; that appellant Moorman had a first mortgage on the seed; that he (Day) wanted the money held until the amount of the claims could be determined; that he did not want to be held liable for the distribution of the money but wanted it held until it might be determined to whom the money should be paid. Day testified that his recollection was that Maxwell stated that he would comply with this request. Day's check was cashed and a cashier's check issued to Maxwell for the amount. Shortly thereafter different claimants came to the bank and demanded the amounts claimed to be due them, and upon one occasion Day, Moorman, the owner of the threshing-machine, and the haulers and laborers, met in the bank and insisted that the money deposited with Maxwell be distributed. As a result of this meeting, Maxwell gave the cashier's check to Day and refused to have anything further to do with the matter. Day delivered the check to Moorman, who distributed the money, paying off his own chattel mortgage to his assignee, and distributing the balance among the other claimants.

Respondent's theory is that all of the appellants, and Boley and his wife, are jointly liable in conversion for the amount paid as the purchase price of the seed.

The cause was tried to the court sitting without a jury. The decision was in favor of respondent and against all of the appellants, for the sum of $1,764.67, which was the amount sued for, less $454 due on the Moorman note and secured by the prior chattel mortgage. The Boleys have not appealed from the judgment, but the First National Bank, R. J. Day and D. B. Moorman have each separately appealed therefrom.

Appellants assign and rely upon numerous assignments of error, but we will consider only such as in our opinion are decisive of the matters involved.

So far as the liability of the appellant bank is concerned, it is not contended that it appropriated the proceeds of the seed to its own use otherwise than by cashing the Day check and issuing a cashier's check for the amount. This seems, however, to have been a convenient and proper means

of handling the funds and protecting them from loss, the cashier's check merely representing the funds which Day had placed with the cashier to be held until the various claims were adjusted.

[1]   Even if the bank held respondent's notes for collection, it would clearly be without authority to apply to their payment any moneys which were deposited with it for other specific purposes, or to apply such a deposit in any way contrary to the instructions given at the time it was made. The bank did not become liable in conversion by receiving the Day check and failing to apply it upon respondent's notes. On the contrary, the Day check having been given the bank with instructions to hold the money until the conflicting claims were settled, it was the bank's duty either to carry out the instructions or to return the check to Day, which it did with his consent. The bank's motion for nonsuit should have been sustained since no cause of action in conversion was made out against the bank, and the action as against it should therefore be dismissed.

[2]   Appellants contend that the evidence affirmatively shows that the chattel mortgage was not acknowledged by defendant Boley's wife, and is therefore void. Under the provisions of C. S., sec. 6374, "no personal property of either husband or wife, that is exempt by law from execution, shall be mortgaged by either husband or wife, without the joint concurrence of both." It is admitted in that case that both husband and wife signed the chattel mortgage. It is provided by C. S., sec. 6375, that:

"A mortgage of personal property is void as against the creditors of the mortgagor and subsequent purchasers and incumbrancers of the property in good faith and for value, unless . . . . 2. It is acknowledged or proven, as grants of real estate . . . ."

Since appellants Day and Moorman were neither creditors of Boley and his wife, nor subsequent purchasers or encumbrancers of the property in good faith, and since they had notice of the existence of the chattel mortgage, they do not come within the classes of persons against whom a chattel mortgage must be acknowledged in order to be valid. Day

and Moorman are therefore not in a position to raise the question of any defect in the acknowledgment of the instrument. The chattel mortgage being good as between the immediate parties, it is good also as to them.

Appellants complain of the action of the court in failing to find that respondent had waived his chattel mortgage lien, if he ever had one, by consenting to the sale of the seed by the mortgagor. If respondent gave his consent to the sale of the seed by Boley, he thereby waived his mortgage lien. (5 R. C. L. 458, 459; *Bellevue State Bank v. Hailey Nat. Bank,* 37 Ida. 121, 215 Pac. 126; *Adams v. Caldwell Milling etc. Co.,* 33 Ida. 677, 680, 197 Pac. 723; *Knollin v. Jones,* 7 Ida. 466, 63 Pac. 638; *Moore v. Jacobucci,* 70 Colo. 171, 197 Pac. 1015; *Luther v. Lee,* 62 Mont. 174, 204 Pac. 365; *United States Nat. Bank v. Great Western Sugar Co.,* 60 Mont. 342, 199 Pac. 245; *Utah-Idaho Livestock Co. v. Blackfoot City Bank,* 290 Fed. 588.) This was a material issue, upon which the court should have found, and having failed to do so, the judgment must be reversed.

[3] It is next insisted that the trial court was in error in permitting respondent to amend his amended complaint by setting out the oral agreement incorporated in the written contract for the sale of the lots, and in admitting evidence to establish such oral agreement. It is apparent that all of the terms of both the written and oral agreements were complied with by the execution and placing in escrow of documents which were designed and were sufficient to effectuate the sale of the lots, so that whether the written or the oral agreement be regarded as the contract of the parties, it was fully executed. And even though one or both of these agreements may have been void, the subsequent acts of the parties pursuant to both were not invalidated thereby. In this view of the law, we perceive no reversible error in the action of the court in permitting the amendment to be made or in admitting evidence of the oral agreement.

[4] Appellants Day and Moorman insist that the amounts claimed to be due for labor and threshing should have been deducted from the proceeds of the sale of the seed, and in

support of this contention they rely upon the provisions of C. S., secs. 7372 and 7373, relating to farm laborers' liens.

It is admitted, however, that no claims of lien were filed. Since laborers' liens are entirely of a statutory creation, a person claiming the benefit of such a lien must substantially comply with the statute, an essential requirement of which is that a claim of lien shall be filed within the prescribed time. (27 Cyc. 110; 17 Cal. Jur. 81, 105.) Until the expiration of the time for filing such claim a mere inchoate right to a lien exists in favor of one who has performed lienable work, which may ripen into an enforceable lien only by the timely filing of a proper claim of lien. Moreover, even though a lien claimant perfects his lien by filing the requisite claim, his remedy for its enforcement is by civil action. It is clear, therefore, that the court did not err in holding that the amounts claimed should not be deducted from the proceeds of sale of the seed.

[5] Upon a careful examination of the record, we conclude that there are a number of material issues upon which the court failed to find. The rule is well settled that a failure to find upon all of the material issues is ground for reversal. (*Wood v. Broderson,* 12 Ida. 190, 85 Pac. 490; *Standley v. Flint,* 10 Ida. 629, 79 Pac. 815; *First Nat. Bank v. Williams,* 2 Ida. 670, 23 Pac. 552; *Carson v. Thews,* 2 Ida. 176, 9 Pac. 605.)

There are other errors assigned that we do not deem of sufficient importance to discuss or determine in this opinion.

The judgment against appellant bank is reversed, and the court is directed to enter up an order dismissing the complaint as against it. The judgment is reversed as to appellants Day and Moorman, and the cause is remanded with instructions to the trial court to grant a new trial. Costs are awarded to appellants.

William A. Lee, C. J., concurs.

GIVENS, J., Concurring Specially.—I concur in the opinion by Budge, J., except that portion which treats of the claim by Day and Moorman that the laborer's liens paid

by them should be deducted from the proceeds of the sale of the seed, wherein he holds that the same should not be deducted because the liens had not been perfected.

The evidence does not disclose that Nohrnberg gave Day and Moorman any authority to pay these claims and therefore, if Nohrnberg had a valid mortgage, Day and Moorman had no right to pay these claims no matter what their status or condition, and I think they should not be deducted for that reason, and not because the liens had not been perfected, a determination of the latter phase not being necessary.

I am authorized to say that Wm. E. Lee and Taylor, JJ., concur with me in this conclusion.

(May 8, 1926.)

ON REHEARING.

BUDGE, J.—Application for rehearing was made and granted in this cause. Briefs were filed by the respective parties and have been examined, together with a re-examination of the record.

[6] Appellants Day and Moorman in their petition for rehearing urge that a finding in favor of appellant bank is a finding in their favor; that this court has misunderstood the testimony with regard to the deposit made by Day with the bank, and the soundness of the opinion with respect to the status of the farm labor claims is questioned.

We have not misunderstood the record; neither are we of the opinion that a finding in favor of the bank is a finding in favor of appellants Day and Moorman, but quite the contrary. The ordinary duty of a bank receiving paper for collection, as was done in the instant case, is to make a proper demand, and to give notice of nonpayment, protest, etc., as may be necessary to fix the liability of other parties. (7 C. J. 609.) As a general rule, after a bank makes a collection it becomes a simple contract debtor for the amount, less the commission charged. (7 C. J. 616.)

It is clear from the testimony that Day desired to be relieved from the burden of making the proper distribution of the proceeds from the sale of the seed. He made no application of such proceeds upon any claim in particular. His deposit was made with the understanding that the bank should pay the money out to other parties as and when the rights of those parties were ascertained. He made the deposit with the bank for a specific purpose, and his deposit, as to respondent and the lien and mortgage claimants, was in the highest degree conditional. It was not payment of respondent's notes. It is Day's contention that the deposit was made with the bank as Nohrnberg's agent for the purpose of protecting respondent. We may admit that the reason why the deposit was made with the appellant bank was that the bank held the notes for collection, but that is not admitting nor conceding that the evidence shows that the deposit was payment. The undertaking by the bank to ascertain the rights of the claimants to the deposit was gratuitous as to Day; it owed him no duty of that kind. In receiving the money from Day and agreeing to see to its proper disbursement the bank, even though it held respondent's note for collection, was rather an agent of Day than agent of respondent. (*Ripley Nat. Bank v. Connecticut Life Ins. Co.*, 145 Mo. 142, 47 S. W. 1.) Whatever the relation was between the appellant bank and Day, it terminated by Day's consent when he received the money back from the bank, and under such circumstances we do not think it lies in the mouth of that appellant to complain that the bank violated any duty to respondent. (*Bradbury v. McClure*, 93 Cal. 133, 28 Pac. 777.) The bank's undertaking to distribute the money was gratuitous as to Day as it was outside the collection contract. As a mere agent to receive payment, the bank could not bind respondent by the proposed distribution. The extent of the bank's authority was known to Day. A deposit with the bank is no discharge unless tendered upon respondent's notes as a payment thereon. The parties for whose benefit the deposit was made or received cannot complain of the return of the money, as they did not show a present right to the payment of

any portion of the money while it was in the hands of the bank. None of them changed their legal status upon the faith of the deposit. (*Winkley v. Foye,* 33 N. H. 171, 66 Am. Dec. 715; *McGorray v. Stockton Sav. & Loan Soc.,* 131 Cal. 321, 63 Pac. 479.)

Appellants Day and Moorman protest against the conclusion drawn from the opinion of this court that before a laborer's claim of lien can be safely paid it must be filed, and if not paid, a civil action must be commenced to enforce it. The obvious answer is that the appellants cannot undertake to adjudicate the rights of the respondent without his consent.

[7] The evidence does not show facts sufficient to charge the appellant bank with the conversion of the alfalfa seed or the proceeds thereof. The respondent's complaint is for a conversion and not for a breach of a contractual liability. If it was the duty of the bank to hold the Day deposit for respondent, that duty arose only because of the fact that the bank held the Boley-Nohrnberg notes, and if there was any such duty at all it is clear that it was a contractual duty. Being a contractual duty it does not concern the other appellants. But the breach of that contractual duty, if one existed, is urged by the respondent and the other appellants as a ground why in this action of conversion a judgment should be rendered against the bank for the breach of that contractual duty. There was no conversion by the bank for the reason that it did not sell the seed or convert the proceeds of the sale of the seed, and had no connection with that transaction. Respondent has not a contractual action against the bank for the amount of the deposit, as the same was not made under such circumstances or with such direction as would constitute it payment upon the respondent's note. The most that can be said, so far as the bank is concerned, is that it was a temporary gratuitous stakeholder of the proceeds of the crop, deposited for a specific purpose. It cannot be logically contended that it follows as a consequence that the bank, innocent of any wrongful intent, in the absence of a wrongful conversion and admittedly not having aided or abetted in the unlawful sale of the alfalfa seed, would be

guilty of a conversion merely because the proceeds of the sale were deposited with it for a specific purpose and thereafter withdrawn by the depositor, which he had a clear right to do so far as the bank was concerned. The original opinion directed the dismissal of the action as against the bank and will, therefore, stand.

[8]   We call attention to the case of *Hill v. Twin Falls etc. Water Co.*, 22 Ida. 274, 125 Pac. 204, wherein reference is made to the section of the statute covering mechanics' and materialmen's liens, the provisions of which are analogous to the section concerning farm laborers' liens. The court said:

"*Under this statute the legislature evidently intended to grant the right to claim a lien* to any person who contributes labor or material for the construction, alteration, or repair of a building or structure upon real property. It will also be observed from the language of this statute that it was clearly the intent of the legislature to grant an absolute lien direct upon the property, to the person who performs labor . . . . without reference to whether such person is an original contractor or a subcontractor, or a laborer or a materialman . . . . *Of course this right is limited by requiring the person claiming the lien to file the claim within the time fixed by the statute, and otherwise complying with the law.*"

It will be observed that the court says "of course" (giving the impression that it was a matter over which there could be no controversy and one which was susceptible of no other construction) "this right" (i. e., the right of lien) "is limited by requiring the person claiming the lien to file the claim within the time fixed by the statute, and otherwise complying with the law." In other words, the filing of the claim within the time and compliance with the law are prerequisite essentials to convert the "right to lien" into a "lien." C. S., sec. 7373, is supported by the construction given in the above case. That section provides that "any person claiming the benefit of this article" must do certain things. This language itself negatives any construction that the lien exists without any steps being taken on the part of the laborer. He must claim the benefit of the article

relating to farm laborers' liens by positive action specified by statute and not by passive silence.

"Laborers upon a farm have no lien for their wages upon the crops produced unless given by statute or by special contract. . . . . These acts, providing as they generally do for a remedy summary in its character and contrary to the course of the common law, must receive a strict construction. Claimants under them must bring themselves strictly within the terms of the acts." (Jones on Liens, 3d ed., vol. 1, sec. 776.)

The laborers "must bring themselves within the terms of the acts" to obtain a lien, and the law does not grant them a lien without action on their part. They are required to file for record a verified claim of lien "within 60 days after the close of said work or labor, with the county recorder of the county in which said work and labor was performed." That was not done within sixty days by the laborers whose claims are sought to be set off as against respondent's mortgage, or at any other time, and may never have been filed. Many of the items were not lienable. This claim is required by C. S., sec. 7373, to contain so much of the facts required to be stated in the form of lien found in C. S., sec. 7362, and includes, among other things, a description of the property upon which the lien is claimed, the name of the owner or reputed owner, the contract for the labor, the performance of the contract, the time of performance, the date of the close of the work, the amount claimed, statement that the same has not been paid, and the amount due. No claim being filed by the laborers in this case, it follows that no such statements were made.

While the statute should be liberally construed, under the rule adopted in this jurisdiction, every material requirement should be complied with. In *Bradbury v. Idaho etc. L. I. Co.*, 2 Ida. 239, 10 Pac. 620, it was held by this court that "the mechanics' lien law must be strictly construed." See, also, *White v. Mullins*, 3 Ida. 434, 31 Pac. 801, wherein it was held that if the name of the owner or reputed owner is not stated in the claim of lien, and the same fails to

contain the terms, time given and conditions of the contract, it is fatal to the lien.

In *Gem State Lumber Co. v. Witty,* 37 Ida. 489, 217 Pac. 1027, this court held purported liens void because they were not filed within the time prescribed by statute after the completion of the contract.

The claim must comply substantially with all the requirements of the statute, and be sufficient in and of itself without reference to extrinsic proof to supplement deficiencies in it. (27 Cyc. 152.) If it does not do so it is insufficient. (*Cox v. Flanagan* (N. J.), 2 Atl. 33; 27 Cyc. 155.)

"The statement is ineffectual *to perfect a lien* if it shows affirmatively on its face that it is filed too late even though the fact be otherwise." (27 Cyc. 156 and cases cited.)

Failure to show in the statement what the work was for on which the lien is claimed renders it void. (27 Cyc. 171, note 74.) Failure to include in the claim of lien the time of rendering services is fatally defective. (27 Cyc. 182); also failure to specify the amount due (27 Cyc. 184). Lack of proper verification to a claim of lien defeats a lien. (27 Cyc. 194.)

This court has held that where a claim of lien is greatly in excess of the amount of actual labor performed, and it is not shown that such claim was made in good faith, the lien fails. (*Blake v. Crystalline Lime Co.,* 37 Ida. 637, 221 Pac. 1100.)

When it is considered that the omission of any single one of the statements required by the statute to be made in the claim of lien is fatally defective and renders the lien void, it must be conceded that the failure to file the claim at all,— in other words, the omission of every requirement of the statute,—wipes out any lien or right to lien which the laborer might have had. It must be remembered that in the instances to which we have referred above, claims of lien had been filed. In the instant case the laborers did not "claim the benefit of" C. S., sec. 7373.

To hold that a laborer has a lien without filing a claim or taking any of the steps which the statute requires is contrary to the rule that lien statutes must be substantially complied

42 Idaho—5

with. It eliminates the provision of C. S., sec. 7373, relating to the filing of the claim of lien. If the laborer is not required to file a claim in order to secure a lien he certainly is not required to make any mention of the name of the owner or reputed owner of the property upon which he claims a lien. It must be apparent that the plain purpose of the legislature in enacting C. S., sec. 7373, requiring the laborer to file a verified claim for record, was to give notice to the owner of the crop, holders of mortgages thereon, and any person interested therein, so that they might protect their rights, and also to notify all persons having anything to do with the crop or the proceeds thereof that such laborers had claimed liens thereon. It was enacted to prevent just what took place here. Nohrnberg had a mortgage on this crop. The Twin Falls Bank & Trust Company, by assignment from Moorman, had a first mortgage on it. Each had an interest in the crop, a property right, and each had a right to anticipate that the mortgagor and all persons dealing with the crop would take notice of their respective mortgages by virtue of their record, and recognize their interests. The Twin Falls Bank & Trust Company received satisfaction of its mortgage; the remainder of the proceeds of the crop, to an exact penny, were paid out by Moorman to the alleged laborers, many of whose claims are conceded to be not lienable. If such dealings receive the sanction of this court respondent has been deprived of his property without due process of law. He has not had an opportunity to question the validity of these alleged liens in a proper action. While it will be conceded that the findings show that Moorman held a first mortgage, a closer examination of the facts show that at the time he disbursed this money he had sold and transferred his mortgage to the Twin Falls Bank & Trust Company and had no interest in the matter whatever.

In *McCoy v. Cook*, 13 Wash. 158, 42 Pac. 546, in the course of its opinion that court said:

"It is the labor performed upon the property designated in sections 1 and 2 of the statute that creates this lien, not the filing of the claim, or notice. *And while the lien will*

*be deemed waived if the written claim be not filed within the time specified by law*, it cannot be divested by any sale by the owner of the property to a third party."

This decision plainly states that the right to lien may be lost by failure to file the claim of lien within time.

Quoting from *Weeter Lumber Co. v. Fales*, 20 Ida. 255, Ann. Cas. 1913A, 403, 118 Pac. 289, the opinion in part reads as follows:

"The materialman or laborer is given an absolute lien *if he files his claim of lien within the time required by law*, and the owner is required, in order to protect himself from liens, to see that all claims of such persons are paid before he pays the contract price to the original contractor. That being true, there is nothing in the contention of counsel for appellant that a payment by the owner of the full contract price to the contractor before the lien is filed is a full defense to all claims for labor or material furnished in the construction of such building or improvement.

"It was held in *Hunter v. Truckee Lodge*, 14 Nev. 24, under the laws of that state, that the legislature intended to give subcontractors and materialmen direct lien upon the premises for the value of their labor and materials, regardless of the payments on the principal contract made prior to *the time within which the law requires notice of their claims to be recorded*, and we are satisfied that under the mechanics' lien law of this state, subcontractors and materialmen have a lien upon the premises for the value of their labor and materials, regardless of any payments made to the original contractor prior to *the time within which the law requires the notice of their lien to be filed*."

The payments last referred to are those made to the original contractors and not to the laborers. To say that laborers are not required to file a claim of lien within the sixty-day period to acquire a valid and enforceable lien, in the face of the italicized portions of the foregoing decision and the decision in *Hill v. Twin Falls Canal Co.*, heretofore referred to, would be an unwarranted and strained construction of C. S., secs. 7372 and 7373, and one that was not con-

templated by the legislature or the previous holdings of this court.

*Warren v. Olson,* 46 N. D. 203, 180 N. W. 529, is relied upon by appellants, where the following language is used: "The (threshing) lien, however, exists from the commencement of the threshing, and a person who purchases the grain within the 30-day period takes it subject to the lien, although the statement was not filed at the time of the purchase," citing *Mitchell v. Monarch Elevator Co.,* 15 N. D. 495, 11 Ann. Cas. 1001, 107 N. W. 1085, wherein it is held that a "statement for a thresher's lien must contain everything required by the statute to be stated therein," and "Chapter 83 of the Revised Civil Code of 1899 gives to threshers of grain an enforceable lien thereon *upon filing a statement within 30 days from the threshing* and such lien exists from the commencement of the threshing," thus negativing the idea that no claim of lien is required, and holding in effect that though the lien might exist it would be lost upon failure to file the claim within time.

In *Hahn v. Sleepy Eye Milling Co.,* 21 S. D. 324, 112 N. W. 843, the facts show that "the threshing was done and a lien filed within the time claimed," and it is stated:

"Conformable to the doctrine recognized and applied by this court in the recent case of *Johnson v. Barry,* 20 S. D. 133, 104 N. W. 1114, 1 L. R. A., N. S., 1159, this action could not be maintained under any circumstances without a valid claim for threshing the grain alleged to have been converted by appellant."

Our attention has been called to the case of *People v. Moxley,* 17 Cal. App. 466, 120 Pac. 43. This case does not hold that the lien exists, but merely that the right to a lien exists, and this is all that is granted by C. S., sec. 7372— the right to the lien and nothing more—and the lien itself does not come into existence or become binding upon the property or take preference over other liens until the laborer has complied with the requirements of C. S., sec. 7373, as to the filing of the lien. In this same case (*People v. Moxley, supra*), the court said:

"And whether we say that the *right of lien* is personal, or inchoate, or otherwise, it is nevertheless, a vested, constitutionally guaranteed and existing right, and when, as in this case, the constitutional *right is rendered enforceable through the observance of statutory provisions*, it is an enforceable right."

In *Provident Mut. Bldg. & Loan Assn. v. Shaffer,* 2 Cal. App. 216, 83 Pac. 274, it is held that "The *inchoate right of lien* which arises by furnishing lumber used in the construction of a house ceases to exist after the expiration of 60 days from the completion of the house."

In *Acme Lumber Co. v. Modern Construction Co.,* 214 Mich. 357, 183 N. W. 192, it is held that "Materialman's lien proceedings are statutory, and a statute prescribing requirements, leading up to the attaching of the lien must be strictly construed, and the essential requirements must be complied with."

In *Mills v. LaVerne Land Co.,* 97 Cal. 254, 33 Am. St. 168, 32 Pac. 169, it was held that prior to the filing of the claim of lien the laborer had but a personal right which was not assignable, but that upon the filing of the claim of lien the laborer could assign it. From this decision no other conclusion can be reached but that prior to the filing of the claim no lien existed, but merely an inchoate right to a lien.

In *Boise Payette Lumber Co. v. Dominican Sisters,* 102 Or. 314, 202 Pac. 554, it is said:

"The right to assert and perfect a mechanic's lien is a statutory privilege. *Brown v. Harper,* 4 Or. 89. This privilege may be exercised or waived, as the lienor may prefer. *Hughes v. Lansing,* 34 Or. 118, 75 Am. St. 574, 55 Pac. 95. The right to a lien being purely of statutory creation, whatever the statute makes necessary to its existence must be done, and one claiming the benefit of that statute must bring himself clearly within its terms."

Jones on Liens, 3d ed., vol. 2, secs. 1389, 1390, contains the following:

"A lien can be secured only by compliance with the statute in filing a notice, claim or statement of lien in the manner

and within the time prescribed. No other notice or claim of lien, though brought to the knowledge of the owner, or of a purchaser from him, has any effect. The filing of the account or claim of lien is a prerequisite to the enforcement of the lien. It does not bring the lien into existence, for the lien exists inchoately from the time of the making of the contract, or from the time the building was commenced, or the work upon it was commenced, whichever the particu-. lar statute prescribes as the beginning of the lien. The lien exists by virtue of statutory provisions and the requirements prescribed for securing the benefits of this remedy must be observed. . . . .

"All the particulars required to be stated in the notice creating the lien are material. They are provided for in order that a proper record or index or docket may be made of the claim, and thereby notice of the claim given to the owner, and protection afforded to purchasers and mortgagees. The omission of any of the particulars required by statute to be stated is fatal to the lien. The facts required in the notice must be averred in the complaint, in order to show a cause of action; and if the notice is defective by reason of the omission of the name of the owner, or of anything which the statute requires, the defect cannot be amended or corrected in the complaint.

C. S., secs. 7372 and 7373, must be construed *in pari materia.* C. S., sec. 7372, provides that "Any person who does any labor on a farm or land in tilling the same, or in cultivating, harvesting, threshing, or housing any crop or crops raised thereon, has a lien on such crop or crops for such labor."

If these laborers were entitled to a lien they never took the essential and requisite steps provided by C. S., sec. 7373, to perfect their liens.

C. S., sec. 7373, provides in part that "Any person claiming the benefit of this *article* must, within 60 days after the close of said work or labor, file for record with the county recorder of the county in which said work and labor was performed, a claim which shall be in substance in accordance with the provisions of section 7362, so far as

the same may be applicable, which said claim shall be verified as in said section provided, and said liens may be enforced in civil actions, in the same manner, as near as may be, as provided in section 7366.'' Such steps are made a condition of the lien, and the court cannot declare purposeless and useless that which the legislature has made a condition of the lien. (*Interurban Const. Co. v. Central State Bank,* 76 Okl. 281, 184 Pac. 905.) To hold that the farm laborers had a lien without complying with the requirements of C. S., sec. 7373, eliminates said section from the statute.

[9] It is conceded by counsel for appellant Moorman that at the time he made the payments to the laborers he was not a lienholder. He had no claim either to the seed or to the money. The mortgage he had held was then owned by the Twin Falls Bank & Trust Company. As he had no lien he had no interest in the property or its proceeds, and therefore was without authority to receive or distribute the proceeds. Being a mere interloper he cannot escape liability by urging the payment of the debt of some other party to which he was a stranger. It is further apparent that Day was an aider and abettor in the distribution of this fund and that he withdrew the money for the express purpose that it might be distributed by Moorman to the payment of claims that were not superior at the time of distribution and never became prior to the lien of the respondent. Both had knowledge of the existence of respondent's mortgage.

In the former opinion upon the question of the sufficiency of the findings of fact made by the trial court we were of the opinion that the findings were insufficient, and particularly in that the court failed to find specifically that respondent had or had not waived his chattel mortgage lien by consent to the sale of the seed by the mortgagor. From a further examination of the record we are constrained to hold now, and particularly in view of the fact that the action against the bank has been dismissed, that the findings of fact are sufficient.

Respondent alleged in his complaint that the appellants ''without the knowledge and consent of the plaintiff (respondent here) took and carried away the said alfalfa seed

and unlawfully converted and disposed of the same and the proceeds thereof to their own use .... then and there knowing that the plaintiff (respondent here) was lawfully entitled to the possession of the said alfalfa seed and the proceeds thereof.'' Appellant Moorman in his answer denied the foregoing allegation. Appellant Day questioned the validity of respondent's mortgage and also denied the foregoing allegation, and upon the trial there was a sharp conflict in the evidence, respondent testifying in support of his allegation above stated, while the testimony of Day and Boley is equally positive that the sale of the alfalfa seed was made with the consent of the respondent. Upon this conflicting evidence the trial court, in its finding of fact No. 6, found that appellants, including Day and Moorman, without the knowledge and consent of the respondent, took and carried away the said alfalfa seed and unlawfully converted and disposed of the same and the proceeds thereof to their own use, the said appellants and each of them then and there well knowing that the respondent was entitled to the possession of the said alfalfa seed and the proceeds; and further found, in finding No. 7, as follows: ''The court further finds that all of the allegations and affirmative defenses contained in the answers of the several defendants herein are untrue and not supported by the evidence, except as in these findings hereinabove mentioned and set forth.''

Since we have now reached the conclusion that the findings were sufficient upon this phase of the case, nothing further remains than to affirm the judgment against appellants Day and Moorman, and it is so ordered. Costs awarded to respondent as against appellants Day and Moorman, and to appellant First National Bank as against respondent.

William A. Lee, C. J., and Givens, J., concur.

TAYLOR, J., Dissenting.—I concur in modifying the judgment to absolve the bank.

I cannot concur in holding that a lien does not exist during the sixty-day period allowed for filing a claim, or that

Moorman could not, under the circumstances, to protect his mortgage, pay during that period the amount of valid liens claimed though not filed, and deduct such payments from the proceeds of the sale.

California has, up to the rendering of the opinion in *People v. Moxley,* 17 Cal. App. 466, 120 Pac. 43, often referred to the right of a lien as an inchoate right, subject to perfection by filing a claim. That case reverses the position of California, and is in accord with the law that the lien exists, although the remedy may be inchoate, during all the time of the performance of labor and up to the time of the expiration of the right to file the lien. This position is again expressed in *Provident M. B. L. Assn. v. Shaffer,* 2 Cal. App. 216, 83 Pac. 274. To the same effect are: *Hahn v. Sleepy Eye Milling Co.,* 21 S. D. 324, 112 N. W. 843; *Mitchell v. Monarch Elevator Co.,* 15 N. D. 495, 11 Ann. Cas. 1001, 107 N. W. 1085; *Holden v. Cox,* 60 Iowa, 449, 15 N. W. 269. "It is the labor performed" which creates the lien, not the filing of the claim. (*McCoy v. Cook,* 13 Wash. 158, 42 Pac. 546; *Warren v. Olson,* 46 N. D. 203, 180 N. W. 529; *Wisconsin Trust Co. v. Robinson & Cary Co.,* 68 Fed. 778, 15 C. C. A. 668. *Mazzera v. Ramsey,* 72 Cal. App. 601, 238 Pac. 101, at 103, is in accord with and cites *People v. Moxley, supra.* See, also, *Siegel v. Hechler,* 181 Cal. 187, 183 Pac. 664, at 666.)

The citation of an array of authorities on the necessities of filing a lien and what the claim of lien shall contain, or that a lien cannot be enforced by action without such compliance, is beside the issue. This is not such a case, and cases treating of such points are not persuasive herein, where the only question is: Does a lien exist prior to such filing?

To set out at length some of the quotations given is to lose sight of their pungent statements on the point involved. When the facts in each case are considered, there is nothing in the decisions to detract from my point that a lien exists during all the time of the performance of labor, and up to the time of the expiration of the right to file the lien

claim. Even excerpts from the opinions quoted from in the opinion on rehearing support this, thus:

" . . . . It was clearly the intent of the legislature to grant an absolute lien direct upon the property, to the person who performs labor . . . . " (*Hill v. Twin Falls S. R. L. & W. Co.*, 22 Ida. 274, 125 Pac. 204.)

"And it is the labor performed upon the property designated . . . . that creates this lien, not the filing of the claim, or notice." (*McCoy v. Cook, supra.*)

" . . . . We are satisfied that under the mechanics' lien law of this state, subcontractors and materialmen have a lien upon the premises for the value of their labor and materials, regardless of any payments made to the original contractor prior to the time within which the law requires the notice of their lien to be filed." (*Weeter Lumber Co. v. Fales,* 20 Ida. 255, Ann. Cas. 1913A, 403, 118 Pac. 289.)

" . . . . The legislature intended to give sub-contractors and material-men direct liens upon the premises for the value of their labor and materials, regardless of payments on the principal contract made prior to the time within which the law requires notice of their claims to be recorded." (*James Hunter & Co. v. Truckee Lodge,* 14 Nev. 24 (45).)

"The lien, however, exists from the commencement of the threshing . . . . " (*Warren v. Olson, supra.*)

" . . . . The right of a lien is . . . . a vested, constitutionally guaranteed and existing right . . . . " (*People v. Moxley, supra.*)

"The filing . . . . does not bring the lien into existence, for the lien exists inchoately from the time . . . . the work . . . . was commenced . . . . The lien exists by virtue of statutory provisions . . . . " (2 Jones on Liens, 3d ed., sec. 1389, p. 617.)

Moorman pleaded that he had a prior mortgage, and set forth with particularity as to the lien claimants that Boley was indebted to each, naming them, in amounts stated, for work performed in cultivating, harvesting, threshing and housing the seed, within a period for which a lien could have been filed; that each "then and there made demand for the payment of said sums and amounts and claimed a

lien" on the seed; "that each and all of the aforesaid lien claimants demanded their money on the 1st day of November, 1920, claimed a lien on the aforesaid alfalfa seed and threatened to and would have filed a lien on the aforesaid described seed unless their claims were immediately paid in full"; and that they "served notice upon this defendant that they claimed a lien thereon, together with an affidavit, stating the amounts and sums due." It must be borne in mind that these claims were paid by Moorman within sixty days of the close of the work, to protect his mortgage.

To say that counsel concede Moorman did not have a mortgage because it had been assigned is to miss the issue in the case, and is losing sight of the record. Moorman, to all intents and purposes had a first mortgage. The court found him entitled to retain "$454, represented by prior chattel crop mortgage covering said crop of alfalfa seed held by the defendant D. B. Moorman." This finding is not questioned, and is the established law and fact of this case. The original opinion herein recites that Moorman received and "distributed the money, paying off his own chattel mortgage to his assignee"; and that "the decision was in favor of respondent . . . . less $454 due on the Moorman note and secured by the prior chattel mortgage." Even as assignor of the mortgage, he had an interest to protect. At all events, he represented the holder of the mortgage. That was the case and the issue presented to the lower court.

One suing for conversion must have had a right to possession at the time of the conversion, not at a later date. One holding a mortgage lien must have a present, absolute right of possession, and must recover upon the strength of his own title, and not the weakness of that of the defendant. (*International Trust Co. v. Palisade L., H. & P. Co.*, 60 Colo. 397, 153 Pac. 1002; *Kinsman v. Stanhope*, 50 Mont. 41, 144 Pac. 1083, L. R. A. 1916C, 443; *Glass v. Basin & Bay State Min. Co.*, 31 Mont. 21, 77 Pac. 302; *Kipp v. Silverman*, 25 Mont. 296, 64 Pac. 884; *Frink v. Pratt*, 130 Ill. 327, 22 N. E. 819; *Smith v. E. T. Davenport & Co.*, 12 Ala.

App. 456, 68 So. 545; *Joseph Dixon Crucible Co. v. Paul,* 167 Fed. 784, 93 C. C. A. 204.)

On the day of the sale, Nohrnberg had no immediate right to possession, but that of a mortgagor with a right to possession only after the rights of prior lienholders; nor had he a right to demand possession on which thereafter to base an action for possession or conversion, without tendering payment of Moorman's mortgage and the just amount of the liens. (*Smith v. E. T. Davenport & Co., supra; Johnson v. Wilson & Co.,* 137 Ala. 468, 97 Am. St. 52, 34 So. 392; *Hogue v. Sheriff of Lewis County,* 1 Wash. Ter. 173.) The situation must be looked at in the light of the facts at and before the sale, not afterwards. (*United States v. Loughrey,* 172 U. S. 206, 19 Sup. Ct. 153, 43 L. ed. 420.)

Can it be said that on such sale without consent of the lien claimants or Moorman, the only surviving right is that of Nohrnberg, who, up to that moment, was junior in right to all of them? By seeking to follow the proceeds of the property, Nohrnberg in effect confirms the sale, and in equity has no greater right in the proceeds than he had in the property. In fact, his present action is a purely equitable proceeding to impress his lien upon the proceeds of a conversion. (25 Cyc. 682; *Judge v. Curtis,* 72 Ark. 132, 78 S. W. 746.)

It has been said that trover may partake of the nature of an equity action, and that plaintiff can recover damages only to the extent of the injury actually sustained, and if goods be sold illegally to discharge a lien, the owner can recover of the purchaser only the value of the goods after deducting the lien. This is a correct statement of the situation here. (*Judge v. Curtis, supra; Keith v. Ham,* 89 Ala. 590, 7 So. 234; *Carpenter v. Going,* 20 Ala. 587; *Reavis v. Barnes,* 36 Ark. 575.)

Day, who handled the money, and Moorman, who received it, knew of the liens. The sale having been made without any consent shown by the lienholders or Moorman, he took the proceeds subject to their liability for payment to the lienholders and his mortgage debt.

An equitable defense may be interposed even in a law action. (37 Cyc. 385; *Penninger Lateral Co. v. Clark*, 22 Ida. 397, 126 Pac. 524.) In equity, Moorman should be entitled to add to his mortgage the amount he paid to protect his lien, and deduct it from the proceeds, whether the liens were filed or not (C. S., sec. 6353; *Provident M. B. L. Assn. v. Shaffer, supra; Shoemaker v. White-Dulaney Co.*, 131 Wash. 347, 230 Pac. 162, 232 Pac. 695; *Leavitt v. Bell* (Neb.), 75 N. W. 524), and whether the mortgage provided for it or not. (*New England L. & T. Co. v. Robinson*, 56 Neb. 50, 71 Am. St. 65, 76 N. W. 415.)

There is nothing in a suggestion that, by paying the liens, appellants were undertaking to adjudicate the rights of respondent without his consent. A mortgagee paying a tax lien does the same thing as was done here, but in a contest he must establish that the tax was a lien. This is done every day. (*Law v. Spence*, 5 Ida. 244, 254, 48 Pac. 282.) C. S., sec. 6344 provides:

"Where the holder of a special lien is compelled to satisfy a prior lien for his own protection, he may enforce payment of the amount so paid by him, as a part of the claim for which his own lien exists."

If Moorman had tendered the amount of these labor liens to the laborers, and it had been refused, he could successfully defend, in any action brought by them for foreclosure, that their lien was lost by their refusal to take the money. It does not seem reasonable that the lien claimants should be put to further expense of foreclosure, and the deduction of all such expense from the proceeds, to the reduction of the fund and the damage of Moorman, or that Moorman be precluded from discharging a lien prior to his own. On the contrary, if, by tendering the amount of a lien and its refusal, it would be discharged, Moorman had a right to pay the liens and add them to the amount due him, and need not proceed to the needless waste and expense of awaiting filing of the liens and foreclosure, and thus perhaps totally destroy even the balance of his own security, as well as that of Nohrnberg.

To hold otherwise will be to hold that no mortgagee can pay or discharge a prior existing, valid lien to protect his security, and recoup the amount thereof even as against the owner of an inferior right, without awaiting filing and foreclosure with all interests, prior and subsequent, made parties to the action, even though he assumes the burden of proof that such lien was valid, and the subsequent lien-holders have their day in court on his assertion of such payment, and a right to contest the validity of the lien and payment; but the mortgagee must sit by and see his security exhausted and lost in needless expense without the right to protect it, though he is willing to assume that burden.

Moorman can make no deduction of money that was not necessarily paid to satisfy a valid lien, because it was not necessary to pay such to protect his mortgage, but Nohrnberg only suffered damage in the amount or value that could be applied to his lien after payment of others having prior rights. Seeking equity, he must do equity.

There should be a new trial to determine all of the facts, what labor claims pleaded were lienable, what amounts were due therefor, and what payments Moorman is entitled to take credit for and retain.

I am authorized to state that Mr. Justice Wm. E. Lee concurs in this dissenting opinion.