ROGERS LUMBER COMPANY, a Corporation, Respondent and Appellant, v. JOHN SCHATZEL et al., and OSBORNE-Mc-MILLAN ELEVATOR COMPANY, a Corporation, Appellant and Respondent.

ROGERS LUMBER COMPANY, a Corporation, Respondent and Appellant, v. JOHN SCHATZEL et al., and WIMBLEDON FARMERS ELEVATOR COMPANY, a Corporation of Wimbledon, North Dakota, Appellant and Respondent.

(204 N. W. 854.)

**Liens — thresher held to have inchoate lien for 30 days after threshing without filing statement of lien.**

1. In an action for conversion of grain, where it appeared that the plaintiff held a chattel mortgage and the defendant had purchased the grain from the mortgagor under an arrangement whereby the proceeds of the sale should be used to pay a thresher's claim, it further appearing that less than thirty days had expired since the threshing was commenced and that the thresher contemplated filing a lien statement under § 6855, Comp. Laws, 1913 unless his claim were paid, it is held that § 6854, Comp. Laws, 1913, which gives an

owner or lessee of a threshing machine a lien upon the grain threshed for the value of his services from the date of the commencement of the threshing, and § 6855, Comp. Laws, 1913, which requires the filing of a lien statement within thirty days after the threshing is completed, give an inchoate lien which exists during the thirty-day period though no statement is on file.

**Liens — failure of claimant of lien, satisfied while in inchoate state, to file lien statement, held not to render right of one discharging claim subject to inferior liens.**

2. The failure of a lien claimant whose lien is satisfied while in an inchoate state, to file the lien statement under § 6855 does not render the right of the one discharging the claim subject to liens which were inferior to the claim satisfied.

Opinion filed June 16, 1925.

Agriculture, 2 C. J. § 132 p. 1021 n. 64, 65.

Appeal from the District Court of Barnes County, *Englert,* J.
Reversed and dismissed.

*F. B. Lambert,* for appellant.

During the thirty days a lien exists by virtue of statute. . . . The object of the statute is to give security for threshing. The statute is remedial in its nature. It should be construed liberally to carry out the object if that can be done by reasonable construction of the language. Mitchell v. Monarch El. Co. 15 N. D. 495, 107 N. W. 1086.

That the vendee in such transfer, having paid moneys upon the purchase price of a threshing outfit, is entitled, upon principles of subrogation, to a lien for the moneys so paid upon the threshing outfit, and to retain possession of such outfit for such purpose. Chrichton v. Qualley, 199 N. W. 858.

Where one who has voluntarily paid the debt of another, it is held, "an equitable debt therefore arises under the principles of subrogation." 3 Pom. Eq. Jur. § 1300.

Subrogation is an equitable doctrine depending upon no contract or privity, and proper to apply whenever persons, other than mere volunteers, pay a debt or demand which in equity and good conscience should have been satisfied by another. Stroh v. O'Hearn, 176 Mich. 164, 142 N. W. 865.

Purchase at a void foreclosure sale of papers subject to attorney's lien held to entitle the purchaser in equity to the benefit of the claim on which the lien was based. McCarty v. Goodsman, 167 N. W. 503.

The doctrine of subrogation does not depend on privity nor is it confined to cases of strict suretyship. It is a mode which equity adopts to compel the ultimate discharge of the debt by him who, in good conscience, ought to pay it, and to relieve him whom none but the creditor could ask to pay. 44 Century Dig. 3446.

The object of subrogation is a prevention of injustice, and it rests upon principles of natural equity. Black v. Chicago G. W. R. Co. 174 N. W. 774.

Doctrine of subrogation is of purely equitable origin and nature, its object being to place a charge where it ought to rest, by compelling payment of a debt by him who ought in equity to pay it. Northern Trust Co. v. Consolidated El. Co. 171 N. W. 265.

The right of subrogation may be recognized at law as well as in equity. Black v. Chicago G. W. R. Co. 175 N. W. 774.

Where a party who has a lien on or other special interest in property wrongfully converts it he is liable for the value of the property, but nevertheless, on principle of equity and to avoid circuity of action, is entitled to recoup the value of the special property and he may likewise mitigate the damage by limiting the plaintiff's recovery to an amount which will compensate him for his actual loss resulting from the conversion. Ample authority for our views will be found in cases cited. Lovejoy v. Banks, 5 N. D. 623, 67 N. W. 956.

Where the purchaser at an execution sale taken subject to existing mortgage any party in interest (not the principal debtor) may pay off the mortgage and even though it be discharged and satisfied of record may keep the lien alive so far as is necessary for his equitable protection, as though he took merely an assignment of the mortgage. Mertson v. Shaffer, 3 Pac. 92.

It is only by looking at the intent rather than at the form that equity is able to treat that as done which in good conscience ought to be done. 1 Pom. Eq. Jur. § 578.

The object of the statute is to give security for threshing grain. The statute is remedial in its nature. It should be construed liberally to

carry out its objects if that can be done by a reasonable construction of its language. Dahlund v. Lorent, 30 N. D. 280.

A court of equity will keep a lien alive or consider it extinguished as will best serve the purposes of justice and the actual and just intention of the parties. Kohlsaat v. Illinois Trust & Sav. Bank, 102 Ill. App. 110.

*McGee & Goss,* for respondent.

A thresher's lien is purely a statutory creation and one who would avail himself of it, must comply with the requirements of the statute creating it. Courts are not at liberty to extend it by construction to cover cases not provided for in the statute. Moher v. Rasmussen, 12 N. D. 71, 95 N. W. 152.

The benefits of the statutory lien can be realized only by a compliance with the statute. . . . This court is powerless to say that any one of these requirements may be dispensed with. . . . We have no such power. The legislature has clearly prescribed what facts shall be set forth on the statement and we have no power to add or subtract therefrom. Brodina v. Vranek, 196 N. W. 311.

The statute . . . imperatively requires, as we construe it, that the party seeking to perfect a lien upon grain threshed by him to file with the register of deeds a written and verified statement embracing certain features enumerated in the statute. Martin v. Hawthorne, 3 N. D. 412, 57 N. W. 87.

The filing of a claim for a lien makes the lien enforceable from the commencement of the threshing . . . this lien becomes enforceable upon the filing of the claim during the thirty days . . . after the filing of claim for a lien, the lien exists as a matter of law against all liens or claims. Mitchell v. Monarch Elevator Co. 15 N. D. 495, 107 N. W. 1086.

It is to guard against abuse of such right the courts, in the absence of a clear showing in support of the claim, will now allow fees for the attendance of mileage of witnesses not subpoenaed and not in fact sworn or examined on the trial. Re Hulme, 171 N. W. 599.

BIRDZELL, J. The plaintiff brought an action against the defendants to recover damages for the conversion of certain grain. The complaint alleges that the defendant Schatzel was in possession of certain

land upon which certain grain was grown; that he had given to the plaintiff a chattel mortgage on the crops to be grown upon the land in 1920; that there was raised in that year 758 bushels of wheat and 49 bushels of flax, which was received by the defendant elevator company and which it had refused to deliver to the plaintiff upon demand. The answer of the elevator company takes issue as to the number of bushels and denies the conversion. It alleges that the grain of Schatzel which was raised upon the land described in the complaint, in the year 1920, and which was brought to the defendant elevator company, was subject to a thresher's lien, which lien had not been verified and filed; that the defendant company had notice that the lien would be filed unless the thresh bill was paid; that to avoid the filing of such lien the selling price of the grain was applied toward the payment of the thresh bill. Upon the trial in the court below the facts were stipulated. At the conclusion of the trial judgment was rendered for the plaintiff for $458.55 and costs. The costs were taxed in the judgment at $79.56. The defendant Osborne-McMillan Elevator Company appealed from the judgment, and both parties, being dissatisfied with the re-taxation of costs, have likewise appealed from the order of the trial court thereon.

The principal controversy on this appeal relates to the effect upon the plaintiff's recovery of the payment of the thresh bill by the defendant elevator company. In the stipulated facts it appears that Schatzel farmed the land under a contract with the owner whereby half the crop was to be turned over to the owner to apply on the purchase price of the land. As to some of the land Schatzel was to pay all of the thresh bill; as to other tracts he was to pay half of it. It further appears that Schatzel entered into a contract for threshing, under which he was to pay $38.00 per hour, and that he settled with one of the threshers by giving his postdated check for $860.00. It was understood that the check would be taken to the First National Bank of Wimbledon and held by it until it fell due (September 25, 1920). The check was drawn on the Merchants National Bank of Wimbledon. It was known that Schatzel had no funds in the bank at the time the check was drawn, but it was agreed between him and the thresher that he should haul his grain to the elevator, sell it and deposit the proceeds with the Merchants National Bank in sufficient amount to take up the check.

On the day the settlement was made the thresher executed a thresher's lien in statutory form and left it, together with the check, at the First National Bank, giving instructions to file the lien if the check be not paid on the day of its date. About September 25th the thresher went to the First National Bank and found that the check was not paid, but the cashier stated that Schatzel was then hauling grain and that there would probably be sufficient funds in the other bank to honor the check within two or three days. The check was honored on September 27th. Schatzel was paid in full by the defendant elevator company for his share of the grain thus delivered to it and the proceeds deposited with the Merchants National Bank and used to honor the check previously given to the thresher. At the time the defendant company paid Schatzel, its agent stated that he could not pay him without assurance that the thresh bill was paid or without knowing that the money would go to pay the thresh bill, whereupon he was apprised by Schatzel of the agreement existing between him and the thresher. There are additional facts regarding the threshing on a different farm which was settled for in about the same way. The trial court held as a fact that the proceeds of the sale of the grain were used to pay for the threshing but that no thresher's lien was ever filed and that none existed. If, as against the claim of the plaintiff, which rests upon its prior chattel mortgage, the application of the purchase price of the grain to the payment of the thresh bill was proper, it is in no position to recover damages for conversion to the extent the proceeds were required to meet the thresher's claim. The contention of the respondent upon the appeal is, that the thresher's lien being statutory and never having been perfected by filing, it is damaged as a matter of law to the full extent of the value of its interest in the grain. Section 6854 of the Compiled Laws of 1913 provides:

"Any owner or lessee of a threshing machine who threshes grain for another therewith shall, upon filing the statement provided for in the next section, have a lien upon such grain for the value of his services in threshing the same from the date of the commencement of the threshing."

Section 6855 provides that "any person entitled to a lien under this chapter shall within thirty days after the threshing is completed, file in the office of the register of deeds of the county in which the grain

was grown a statement in writing, verified by oath, showing the amount and quantity of the grain threshed, the price agreed upon for threshing the same, the name of the person for whom the threshing was done and the description of the land upon which the grain was grown," and that "unless the person entitled to the lien shall file such statement within the time aforesaid, he shall be deemed to have waived his right thereto." A number of decisions in this jurisdiction are referred to as establishing the proposition that it is only by compliance with the terms of the above statute that the lien can be brought into existence, that the filing of the lien is a necessary step and that if the lien is not brought into existence in the manner required by the statute it is wholly non-enforcible.

The defendant elevator company was chargeable with notice of the thresher's claim at the time it paid for the grain in the instant case. Mitchell v. Monarch Elevator Co. 15 N. D. 495, 107 N. W. 1085, 11 Ann. Cas. 1001. Ample time yet remained in which the thresher might file his lien statement. The company also had reason to believe that the statement would be filed unless the thresher's bill were paid. During the thirty-day period, following the completion of the work, neither the purchaser nor the mortgagee of the property could acquire it except subject to the claims of the thresher. In Mitchell v. Monarch Elevator Co. supra, this court said, at page 500:

"The intention of the legislature clearly was to subject the grain to a lien for the threshing during the 30 days and this lien became enforceable upon the filing of the claim during the 30 days."

The statute has the peculiarity of making the lien when filed relate back to the commencement of the threshing and during that period the grain cannot be disposed of in such a manner as to defeat the lien, provided only it is perfected by filing within the limitation. Where, however, during this period and before the statement is filed, the claim of the thresher is recognized by payment, the superior quality of the claim does not, in our opinion, become dependent upon the doing of a useless act. At the time the payment is made in these circumstances the lien is inchoate and it is superior. The filing of the lien, while a necessary step in the enforcement, is in reality an idle ceremony where the enforcement is rendered unnecessary by the voluntary discharge of the obligation to secure which the inchoate lien exists. To hold that

the failure to perform this idle act renders that inferior which before was superior, would be placing a premium upon mere formality.

We do not, of course, question the soundness of the authorities relied upon by the respondent to the effect that, where it is sought to *enforce* this statutory lien, there must first be substantial compliance with the statute, but in the instant case the lien is not being enforced. It is functus officio. Its discharge, while in its inchoate state, is merely recognized as having an effect different from the discharge of an unsecured claim. We hold that the superiority of the claim thus satisfied is not defeated through the failure to take steps that would have been necessary had *enforcement* been contemplated. It follows from what has been said that the judgment must be reversed. It is, therefore, unnecessary to consider the questions concerning the costs.

Judgment reversed and action dismissed.

CHRISTIANSON, Ch. J., and NUESSLE, BURKE, and JOHNSON, JJ., concur.