GREAT FALLS FARM MACHINERY CO., APPELLANT, *v.*
ROCKY MOUNTAIN ELEVATOR CO., RESPONDENT.

(No. 7,032.)

(Submitted April 6, 1933. Decided April 25, 1933.)

[22 Pac. (2d) 303.]

*Messrs. Speer & Hoffman,* for Appellant, submitted a brief; *Mr. Harvey B. Hoffman* argued the cause orally.

*Messrs. Freeman, Thelen & Freeman,* for Respondent, submitted a brief; *Mr. James W. Freeman* argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

This is an action in conversion brought by the Great Falls Farm Machinery Company, a corporation, against the Rocky Mountain Elevator Company, also a corporation. The cause is submitted to us on an agreed statement of facts.

On March 27, 1930, Gustave Ekert, a farmer then indebted to the plaintiff on a promissory note for $300, due on or before October 1, 1929, executed to the plaintiff herein a chattel mortgage covering the crops to be grown on certain specifically described land in Cascade county. This mortgage was filed on March 28, 1930. Under the provisions of the mortgage plaintiff was authorized upon default in any of the terms of the mortgage, to declare the whole sum due and payable and to enter upon the premises of Ekert and take possession of the crop. Ekert defaulted in his payments. On August 11, 1930, Ekert, then in possession of an unharvested crop of wheat standing on the land described in the mortgage, hired one Leistiko to combine the wheat. Leistiko combined and hauled to the elevator of the defendant company 315½ bushels of this wheat. On August 19, 1930, Leistiko served upon the defendant elevator company a notice of claim of lien, pursuant to section 8367, Revised Codes of 1921, as amended by Chapter 20, section 2,. Laws of 1929. The reasonable value of the wheat is stipulated to be $198.94, and the value of the services of Leistiko is likewise stipulated to be $198.94. The defendant company, by and with the knowledge and consent of Ekert, upon demand by Leistiko paid the $198.94, claimed for his services in combining and hauling the wheat, to him. Leistiko did not at any time file his motion of lien in the office of the county clerk as is required by the provisions of section 8367, as amended, supra. He evidently assumed that, having received the money, no further action was required. The plaintiff machinery company demanded the possession of the grain and the defendant refused to deliver the same to it. This action followed. Defendant had judgment and from it plaintiff prosecutes this appeal.

Under the decisions of this court it is clear that the plaintiff here, as chattel mortgagee of the crop, has the right to bring an action in conversion against the subsequent purchaser. (*Moore* v. *Crittenden,* 62 Mont. 309, 204 Pac. 1035; *United States Nat. Bank* v. *Great Western Sugar Co.,* 60 Mont. 342, 199 Pac. 245.)

The question to be decided is whether the defendant elevator company was justified in paying to Leistiko the value of the wheat. The answer to this question depends upon whether Leistiko ever had a valid and existing lien upon the crop and particularly at the time of payment. The legislative declarations pertinent to this inquiry are sections 8366 and 8367, Revised Codes of 1921, as amended by Chapter 20, sections 1, 2, Laws of 1929, as follows:

"Section 8366. All threshermen owning or operating threshing machines, and all owners of combined harvester and threshers, shall have a lien upon the grain and other crops threshed by said threshing machine or cut and threshed by said combined harvester and thresher, for and on account of the services rendered and the labor performed by them on said grain and crops.

"Section 8367. Every person intending to avail himself of the benefits of this Act must file with the County Clerk of the county in which said grain or other crops were grown, within sixty days after the last service was rendered or labor performed in the threshing of said grain or other crops, or the cutting and harvesting and threshing by said combined harvester and thresher, a just and true account of the amount due him or them for such services or labor, after allowing all just credits and offsets and containing a correct description of the grain or other crops to be charged with such lien, the price agreed upon for such threshing or cutting and harvesting, the name of the person, firm or corporation for whom such labor and services were performed, and a description of the lands as nearly as possible, upon which said grain or other crops were raised, and a description of the legal sub-division of land upon which said grain is stored, and if said grain is stored in an elevator, the locality of the said elevator, which statement of facts shall be verified by affidavit of the person claiming such lien, or his duly authorized agent or attorney, having knowledge of the facts; and any error or mistake in the account or description of the grain or other crops or of the

property upon which it was raised, shall not invalidate said lien. If the grain or other crops so threshed, cut, harvested and threshed are being hauled from the machine or combine direct to the elevator or to any other purchaser, then the threshermen or owner of the combine desiring to claim such lien shall also serve written notices upon the elevatorman or other private purchaser, that he will claim or hold a lien upon said grain or other crops for his services or labor performed in threshing, or cutting and threshing the same.''

In construing the sections of the Code relative to mechanics' liens, this court has repeatedly held that those sections create ''a new right, and the statutory proceedings by which this new right is perfected and enforced must be strictly followed.'' (*Interstate Lumber Co.* v. *Magill-Nevin etc. Co.,* 57 Mont. 334, 188 Pac. 144, 145; *Stritzel-Spaberg Lumber Co.* v. *Edwards,* 50 Mont. 49, 144 Pac. 772; *McGlauflin* v. *Wormser,* 28 Mont. 177, 72 Pac. 428.) These considerations are applicable to a thresherman's lien under the statute. It, too, is a new right and the statutes requiring its initiation by filing with the county clerk must be at least substantially followed.

In this case no statement of account was ever filed with the county clerk as provided by statute. Defendant's position is that the lien is created by the ''services and labor performed,'' and not by the filing, and hence that Leistiko's lien was in full force and effect during the sixty days immediately following the day on which he rendered his last services, notwithstanding his failure to file, and that, since the lien was in existence at the time the defendant turned the money over to him, defendant has a valid defense to this action. The case of *Rogers Lumber Co.* v. *Schatzel,* 52 N. D. 837, 204 N. W. 854, 856, involving almost identical facts, is relied upon to support this contention.

With this contention we cannot agree. The legislature has seen fit to give to the thresherman or harvester a lien having priority over all other liens or encumbrances, with the exception of the lien of the one who furnishes the seed from which the particular crop is grown. As the price of this lien the

harvester or thresherman must file with the county clerk a statement of account, verified by oath. The language of the statute is clear and explicit as to this. It says, ''Every person intending to avail himself of the benefits of this Act must file,'' etc. Presumably, the reason for this requirement is to give to the other encumbrancers such notice as will enable them to protect their rights in the crop. It is true that, upon filing, the lien automatically takes effect from the time of the rendition of the services. When the necessary filing is made, the doctrine of relation back applies, but unless the filing is made within the statutory period, the thresherman and his assigns are mere unsecured creditors.

The elevator company in this case stands in no better position than would Leistiko, were he claiming an interest in the grain. It, in purchasing the rights of Leistiko, did not make the filing unnecessary. The secondary encumbrancers having an interest in the grain are entitled to test the validity of the thresherman's claim, whether that claim is held by the thresherman or another. When the elevator company succeeded to the thresherman's right, it took it subject to the right of interested parties to contest it. The filing is required in order to give those parties notice of the claim and an opportunity to contest the same. Hence we find that Leistiko lost his right to a lien by failure to follow the statute, and that the elevator company is in no better position than Leistiko. This result was reached by the supreme court of Idaho in the case of *Nohrnberg* v. *Boley*, 42 Idaho, 48, 246 Pac. 12, and in *Vollmer Clearwater Co.* v. *Union Warehouse & Supply Co.*, 43 Idaho, 37, 248 Pac. 865.

The true distinction between the holdings of the Idaho court and the North Dakota court is found in the fact that the former, following the general rule, recognizes the right of the lienor, from the time he performs the service to the time of the filing of his lien, as an inchoate right which may or may not ripen into an actual lien. If the filing is made within the statutory period, then the lien relates back in such a way as to give full force and potency to it from the beginning, but

if the filing is not made, the inchoate right never ripens into an actual lien. The North Dakota construction is based upon the theory that the actual lien comes into existence full-fledged when the labor is performed. That court, in the *Rogers Lumber Company Case,* supra, said: "The filing of the lien, while a necessary step in the enforcement, is in reality an idle ceremony where the enforcement is rendered unnecessary by the voluntary discharge of the obligation to secure which the inchoate lien exists." It is difficult to reconcile this statement with the contention that an actual lien, good as against the world, comes into full being upon the rendition of the services, rather than upon the filing of the account. It is obvious that the view of the North Dakota court might well be accomplished by legislative enactment and thereby, as the court said, an "idle ceremony" avoided, but the fact remains that our legislature did not make any such specific provision and it is beyond the power of this court to interpolate such a provision into the text of the law and by construction declare a plain mandate of the law to be an "idle ceremony."

It may be said, however, that the period which we may denominate as an open period between the performance of the labor and the filing, presents a rather difficult matter. That is evidenced by the fact that section 8367, as amended by Chapter 112, section 2, Laws of 1931, has shortened the time for filing to ten days, whereas the law under consideration gives the prospective lienor sixty days within which to file. All this impresses us with the fact of recognition by the legislature that vested rights cannot be ignored without some kind of notice. Holders of mortgages are restricted in their ultimate rights by the terms of the law, but such restrictions cannot be imposed without notice and a consequent opportunity to be heard.

Defendant urges that plaintiff has failed to prove a conversion for the reason that the demand was made during the sixty days within which Leistiko had a right to file his account, and that during that time the right of possession was in Leistiko; hence that when the plaintiff made his de-

mand it had no right to the possession of the grain and that refusal to deliver did not constitute conversion. The contention must fail for the reason that the right of possession was not in Leistiko. The thresherman's rights in a case of this nature are based upon the statute, and it gives him no right of possession.

The judgment is reversed and the cause remanded, with direction to enter judgment for the plaintiff.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES ANGSTMAN, MATTHEWS and ANDERSON concur.

Rehearing denied June 3, 1933.